## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSHEÉ BAUGUS  individually and on behalf of all other persons similarly situated, <br><br>           Plaintiff, <br><br>    v. <br><br> EVENT TICKETS CENTER, INC., <br><br>           Defendant. | Civil Action No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Osheé Baugus brings this action on behalf of himself, and all others similarly situated against Event Tickets Center, Inc. ("Defendant").   Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     For over a year and a half, Defendant had been nickel and diming visitors of its ticket purchasing platform, in violation of the New York Arts and Cultural Affairs Law § 25.07(4). Whenever a consumer selects a ticket for purchase on the website www. eventticketcenter.com, she is quoted a fee-less price, only to be ambushed by hefty "Service Fee" in small grey font on the final checkout screen after clicking through the various screens required to make a purchase.

2.     Worse yet, because New York is a busy place, and because these fees are only flashed *after* a consumer selects their tickets, Defendant can plausibly put the consumer on the shot clock and tell them the need to decide quick, because Defendant cannot hold their seats

1

open forever. Throughout the purchase process, Defendant's site shouts: "Tickets May Sell

Out!" Figure 3, *infra*. "Act now before your tickets are sold!" *Id*. For emphasis, in red bolded

font, it says: "<span style="color:red">Inventory is limited.  Secure your tickets before they are sold by ordering now</span>."

*See* Figure 4, *infra*.

3.      And once consumers reach the final, long form checkout page, everything on

the page is meant to hide Defendant's Service Fees. Whereas every other component is

emphasized in bolded text, the Service Fees appear in small grey font.  The page contains

hundreds of words and dozens of features in a dizzying array bright colors, including 12 green

fillable forms, 7 blue hyperlinks scatters across the page, and "Highly Recommended" green

box advertising extra add-ons. However, consumers must not waste time scrutinizing the

charges and actually reading everything that appears on this cluttered page. Perhaps the most

attention-grabbing element is the red countdown timer at the top of the page, with bolded red

text right above it, whispering "**<span style="color:red">HURRY!</span>**"  If the clock runs out, consumers will be kicked out,

and forced to start the ticket purchase process all over again.  This cheap trick has enabled

Defendant to swindle substantial sums of money from its customer.

4.      To stop this hustle, New York enacted Arts & Cultural Affairs Law ("ACAL")

§ 25.07(4), which includes two provisions relevant to this case. First, ACAL § 25.07(4)

provides that  "any licensee or other ticket reseller, or platform that facilitates the sale or resale

of tickets <u>shall disclose the total cost of the ticket</u>, inclusive of all <u>ancillary fees</u> … <u>prior to the

ticket being selected for purchase</u>." *Id*. (emphasis added). Second, the ticketing platform "shall

… disclose in a <u>clear and conspicuous manner</u> the portion of the ticket price stated in dollars

that represents a service charge, or any other fee or surcharge to the purchaser."  *Id*. (emphasis

added).  In case the language leaves annoy doubt, the law clarifies that "[t]he price of the ticket

2

shall not increase during the purchase process." *Id.* "Disclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading." *Id.* This latest version of the law went into effect August 29, 2022. See Exhibit A.

5.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other consumers who purchased tickets through Defendant's website for actual and/or statutory damages and reasonable attorneys' costs and fees under New York Arts and Cultural Affairs Law § 25.33.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.   Defendant sold at least 100,000 tickets through its website and mobile application during the applicable class period and is liable for a minimum of fifty dollars in statutory damages for each transaction.

7.      This Court has personal jurisdiction over Defendant because Defendant operates its website and sells tickets to events in this District through its website.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff purchased a ticket through Defendant's website to an event in this District.

## PARTIES

9.      Plaintiff Osheé Baugus is an individual consumer who, at all times material hereto, was a citizen and resident of Bronx, New York. On September 3, 2023, Plaintiff purchased two tickets to SuicideBoys, Ghosten in Madison Square Garden through Defendant's website. Later, on September 17, 2023 Plaintiff also purchased one ticket to Joey Valence & Brae

at the Mercury Lounge in New York City through Defendant's website.  On both occasions the transaction flow process Plaintiff viewed on Defendant's website was substantially similar to that depicted in Figures 1 through 9 in this Complaint, and on both occasions, he paid Defendant's Service Fee.

10.    Defendant Event Tickets Center, Inc. is a Florida corporation with its principal place of business at 308 W. University Ave., Gainesville, FL 32601.  Defendant owns and operates www.eventticketscenter.com and the Event Tickets Center mobile app, which sells tickets to events throughout the United States, including in New York City.

## RELEVANT FACTUAL ALLEGATIONS

11.    A consumer may browse event tickets available through resale on Defendant's website, www.eventticketscenter.com, and may sort by location, venue, artist, or team. *See* Figure 1.



**Figure 1**

12.      After a consumer selects a location, venue, artist, or team, he must close or acknowledge a pop-up warning that "Tickets May Sell Out!" urging the consumer to "Act now before your tickets are sold!" before accessing the screen that lists the events for which tickets are available with dates, times, and the option to "SHOP TICKETS." *See* Figure 2.



**Figure 2**

13.      Once a consumer clicks the "Shop Tickets" button for the date and time, the website opens a page with another pop-up warning with the same message that "Tickets May Sell Out!" again advising the consumer to "Act now before your tickets are sold!" which must also be closed or acknowledged before the consumer may select his seats. *See* Figure 3.



**Figure 3**

14.    After this second pop-up warning is closed, yet another pop-up appears, labeled as an "Important Notice," explaining that "Inventory is limited" and encouraging the consumer to "Secure your tickets before they are sold by ordering now." *See* Figure 4.  The consumer may only close this pop-up window by clicking the "View Tickets" option at the bottom of the message. *Id.*



**Figure 4**

15.     The consumer may only view and select available seats by section once he has closed this third pop-up warning. *See* Figure 5, next page.  A general admission Bronze section ticket for the 2024 Atlantic 10 men's basketball tournament at 11:30 a.m. on March 12, 2024 at Barclay's Center was quoted at "$68/ea." *Id*.



**Figure 5**

16.     Once the consumer selects their desired section, he is prompted to select the number of tickets he would like to purchase. *See* Figure 6.  An "Estimated Subtotal" multiplies the number of tickets selected and the individual ticket price, calculating that two tickets to the general admission Bronze section will be "$136." *Id*.  A message in lighter, gray text below the "Estimated Subtotal" explains that this calculation is "*(Not including fees)*." *Id*.  A consumer must then select "Continue to Checkout" to proceed. *Id*.



**Figure 6**

17.     As soon as the consumer is sent to checkout, he is met with a pop-up message warning that Defendant will "hold these tickets for another 9:59 minutes." *See* Figure 7.  The consumer must close this pop-up by clicking "Start," yet the shot clock has begun before the consumer has even assented to the countdown. *Id.*  The countdown timer appears in red text below a message to "HURRY!" *Id.*  At this stage, a box in the right portion of the screen indicates that a quantity of two tickets at $68 each will total "**$136**." *Id.*  This screen includes no indication that any additional fees will be assessed. *Id.*



**Figure 7**

18.     While the countdown timer ticks down, the consumer must enter his email and payment and delivery methods before he may "PROCEED TO PAYMENT." *See* Figure 8. Again, the same "$136" price is displayed, excluding ancillary fees. *Id.*



**Figure 8**

19.     Only when the consumer has entered his email and payment and delivery methods does a "Payment" screen appear. *See* Figure 9.  The summary box in the right portion of the screen still displays the "$136" total at this stage, but once the consumer enters his Billing Address a different, new total of "$195.45" discreetly appears, including a "Service Fee" of "$21.76" per ticket. *Id.*  This new total price of "$195.45" also includes "$15.93" in taxes. *Id.*  Of course, at this point, time is dwindling on the countdown timer and the consumer cannot feasibly review these last-minute changes.

**Figure 9**

## NEW YORK ARTS & CULTURAL AFFAIRS LAW

20.      Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law §

25.07(4), which provides that "every operator … of a place of entertainment … shall disclose the

total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the

ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in

dollars that represents a service charge, <u>or any other fee</u> or surcharge to the purchaser.  Such

<u>disclosure</u> of the total cost <u>and fees</u> shall be displayed in the ticket listing <u>prior to</u> the ticket being

<u>selected for purchase</u>." *Id*. (emphasis added).  And "[t]he price of the ticket shall not increase

during the purchase process." *Id.*; *Compare with* Figures 3 through 9.

21.      Shortly after the law was enacted, ticketing websites peppered the State of New

York's Division of Licensing Services with questions about the scope of the law.  As explained

by the Division of Licensing Services, "the ticket purchasing process begins once a consumer

visits a ticket marketplace and first sees a list of seat prices." *See* N.Y. Dep't of State, Div.

Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached

hereto as **Exhibit A**, at 1.  "From the moment the prospective purchaser assesses the [] ticket lists

through the final payment … there should be no price increases to the purchaser for the ticket

itself." *Id.*  "When a prospective purchaser selects a ticket with full disclosure of the <u>ticket price</u>,

the purchaser <u>should not then have to search for the total price</u> of the ticket <u>as the purchaser</u>

<u>proceeds through the purchasing process</u>, it should continue to be readily available to the

purchaser." *Id*. at 2 (emphasis added).

## CLASS ACTION ALLEGATIONS

22.      **Nationwide Class:** Plaintiff seeks to represent a class defined as all individuals

in the United States who purchased tickets to events in New York through Defendant's website,

www.eventticketscenter.com, or the Event Tickets Center mobile app on or after August 29, 2022 and paid fees even though such fees were not disclosed the first time the individuals were presented with a list of seat prices.  Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

23.    **New York Subclass:** Plaintiff also seeks to represent a subclass defined as all individuals in the state of New York who purchased tickets to events in New York through Defendant's website, www.eventticketscenter.com, or the Event Tickets Center mobile app on or after August 29, 2022 and paid fees even though such fees were not disclosed the first time the individuals were presented with a list of seat prices.  Excluded from the New York Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

24.    Members of the Nationwide Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and New York Subclass number in at least the hundreds of thousands.  The precise number of Nationwide Class and New York Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and New York Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

25.    Common questions of law and fact exist as to all Nationwide Class and New York Subclass members and predominate over questions affecting only individual Nationwide Class and New York Subclass members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases

during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4); and (c) whether Defendant failed to disclose its service fee in a clear and conspicuous manner in violation of New York Arts & Cultural Affairs Law § 25.07(4).

26.     The claims of the named Plaintiff are typical of the claims of the Nationwide Class and New York Subclass in that the named Plaintiff and the Nationwide Class and New York Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to disclose the total cost of their tickets, including Defendant's service fee, throughout the online ticket purchase process.

27.     Plaintiff is an adequate representative of the Nationwide Class and New York Subclass because his interests do not conflict with the interests of the Nationwide Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Nationwide Class and New York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

28.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and New York Subclass members.  Each individual Nationwide Class and New York Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability.  Class

treatment of the liability issues will ensure that all claims and claimants are before this Court for

consistent adjudication of the liability issues.

**COUNT I**
**New York Arts & Cultural Affairs Law § 25.07**
**(On Behalf Of The Nationwide Class and New York Subclass)**

29.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully

set forth herein.

30.    Plaintiff brings this claim individually and on behalf of the members of the

Nationwide Class and New York Subclass against Defendant.

31.    Defendant is a "licensee or other ticket reseller, or platform that facilitates the

sale or resale of tickets" to a "place of entertainment," because Defendant owns, operates, or

controls www.eventticketscenter.com and the Event Tickets Center mobile app, where consumers

can purchase tickets to places of entertainment.  "'Place of entertainment' means any privately or

publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack,

museum, amusement park, or other place where performances, concerts, exhibits, athletic games

or contests are held for which an entry fee is charged." N.Y. Arts & Cult. Aff. Law § 25.03(6)

(emphasis added).

32.    Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing

to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to

purchase the ticket" after a ticket is selected, as depicted in Figures 3 through 8 of this

Complaint.

33.    Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by

failing to clearly and conspicuously disclose its service fee on Figures 6 and 9.

34.    Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by

14

misleadingly disclosing its subtotals and fees on Figure 9, by presenting the subtotal more prominently than the total price, and by presenting the service fee in the same size font as the total price.

35.    Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the price of its tickets during the purchase process, as depicted in Figures 3 through 9 of this Complaint.

36.    On September 3, 2023, Plaintiff purchased two tickets to SuicideBoys, Ghosten in Madison Square Garden through Defendant's website and was forced to pay Defendant's Service Fee. Later, on September 17, 2023 Plaintiff also purchased one ticket to Joey Valence & Brae at the Mercury Lounge in New York City through Defendant's website and was again Service Fee.  Plaintiff was harmed by paying Defendant's unlawfully applied Service Fee.

37.    Plaintiff was also harmed by paying this unlawful Service Fee. The Service Fee was unlawful because (1) it was not disclosed to Plaintiff at the beginning of the purchase process, and (2) it was not clearly and conspicuously disclosed.

38.    Plaintiff was also harmed by not receiving all-in pricing at the outset of the transaction, because this lack of full disclosure coupled with false time pressure made it impossible for Plaintiff to compare the true costs of his ticket from Defendant's site to prices offered on other sites that sell tickets to the same or similar events.  The downstream consequence of Defendant's actions is that Defendant was able to reduce price competition, distort the ticket marketplace, and cause consumers to overpay.

39.    At the time he purchased his ticket, Plaintiff did not know New York Arts & Cultural Affairs Law made Defendant's conduct and fees unlawful.  Plaintiff was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his

counsel prior to purchasing his tickets. Plaintiff was instead browsing Defendant's website because he sincerely intended to purchase tickets, and he did, in fact, purchase those tickets.

40.     On behalf of himself and members of the Nationwide Class and New York Subclass, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees. *See* N.Y. Arts & Cult. Aff. Law § 25.33.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and New York Subclass, prays for judgment as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief; and

(g)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: December 13, 2024                    **BURSOR & FISHER, P.A**.

                         By:       <u>/s/ *Philip L. Fraietta*</u>
                                     Philip L. Fraietta

Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

17

**EXHIBIT A**

**DIVISION OF LICENSING SERVICES**
STATE OF NEW YORK
**DEPARTMENT OF STATE**
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
P.O. BOX 22001
ALBANY, NY 12201-2001
TELEPHONE: (518) 474-4429
HTTPS://DOS.NY.GOV

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

October 24, 2022

Via email only

███████████
███████████████████
████████████████

Re:    Request for Additional Guidance – New York State Senate Bill S.9461
       (now L 2022, ch. 358, eff. June 30, 2022)

Dear ██████████████,

Please accept the following reply on behalf of the New York State Department of State (the "Department") regarding your letter dated October 3, 2022. In your letter, you requested additional guidance from the Department about the changes, recently adopted, to the New York State Arts and Cultural Affairs ("ACA") law relating to ticket resellers, by submitting several questions with potential scenarios.

Ticket resellers, including platforms that facilitate the sale or resale of tickets are regulated by Article 25 of the ACA, which was amended effective June 30, 2022, by L 2022, ch 358 (previously A.10500/S.9461). The amendments to the Article incorporated "recommendations from a…legislative investigation into the state's live event ticket industry due to concerns about potentially unfair, deceptive, and anti-consumer practices occurring in the primary and secondary markets." (S.9461 Sponsor's Memo). Most of the amendments were to take effect on the sixtieth day after becoming law, which has already occurred, and thus "[e]very operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets…" should now be in compliance with the amended law. ACA §§ 25.03, 25.07(4)

Your questions are noted below, as follows:

(1) Does the ticket purchasing process begin once a consumer visits a ticket marketplace and first sees a list of seat prices?
   a. As to be explained below, it is the Department's opinion that this question should be answered in the affirmative.
(2) Can a ticket marketplace display a ticket price that changes from the first time the customer sees the price to when the customer selects the ticket for purchase?
   a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.



(3) In addition to changing a ticket price during the purchase process, can a ticket marketplace obscure the second showing of a price such that the consumer has to scroll down to see the price?

    a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.

(4) Can a ticket marketplace assess 'service and delivery fees' after selecting them and entering in payment information?

    a. As to be explained below, it is the Department's opinion that this question should be answered in the negative.

The requirements that must be met in the ticket purchasing process, as described in Article 25 of the ACA, as amended, begin the moment a prospective purchaser visits a ticket seller/reseller or other platform selling or reselling tickets (collectively, "reseller"), and such prospective purchaser first views the listings of the seats/tickets. Under ACA § 25.07(4), as amended, resellers are obligated to "disclose the total cost of the ticket inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose…the portion of the ticket price…that represents a service charge, or any other fee or surcharge…displayed in the ticket listing ***prior to the ticket being selected*** for purchase." (emphasis added). In short, the ticket listing must include the total cost of the ticket, with a breakdown of all service charges, fees and surcharges, that the purchaser must pay just to purchase the ticket, by itself (not including delivery or other optional charges).

In addition, the language in ACA § 25.07(4), as amended, is clear and specific that the price of a ticket "***shall not increase during the purchase process***…". (emphasis added). Expressly excluded however are "reasonable fees for delivery of non-electronic tickets…". Id. From the moment the prospective purchaser accesses the reseller's ticket lists through the final payment, with the exception of delivery fees and service charges for other optional "special services", if any, permitted under ACA § 25.29(1)(a), there should be no price increases to the purchaser for the ticket itself. When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser should not then have to search for the total price of the ticket as the purchaser proceeds through the purchasing process, it should continue to be readily available to the purchaser.

Under ACA § 25.07(4), as amended, *all service charges, fees and surcharges* to the prospective purchaser must be *disclosed* in the ticket listing ***prior to the ticket being selected for purchase***, and the portion of the ticket price that represents a service charge, or any other fee or surcharge, must be disclosed in a clear and conspicuous manner. Disclosure of delivery fees for non-electronic tickets, is set forth in ACA §§ 25.07(4) and 25.29(2), as amended. ACA §§ 25.07(4) and 25.29(2) provide that "a ***reasonable and actual cost for delivery***" of non-electronic tickets based on the delivery method selected by the purchaser shall be disclosed "***prior to accepting payment***…***".*** (emphasis added). There is no delivery charge allowed for tickets delivered electronically or for tickets that may be printed independently by the purchaser. ACA § 25.29(2).

Notably, ACA §25.29(1)(a) was not amended and allows a reseller to charge reasonable service charges for "special services." Delivery is specifically delineated as a "special service", even though delivery and delivery charges are now addressed more specifically in the law. Most of the described special services appear to be able to be included in the total ticket price at the beginning of the purchase

process, at least in the case of online platforms, as they are not usually optional.  However, optional "ticket protection" insurance appears to fall within the category of "special services", even though not specifically referenced.  Obviously, such "special service" would not be disclosed as part of the ticket price at the outset since it is an optional special service.  This coincides with how service charges, surcharges, fees, and delivery options and charges are handled under the law.  The amendments emphasize candid and non-misleading disclosure.  Due to this emphasis, including delivery costs delineated as a special service required to be disclosed prior to the acceptance of any payment, it appears that charges for other optional "special services" allowed under ACA §25.29(1)(a), not already included in the ticket price, must also be disclosed prior to accepting payment.  If a ticket purchaser opts to purchase insurance, the costs of such special services would have to be disclosed **before** accepting payment and should certainly be disclosed prior to purchaser providing payment information at the end of the transaction.

Where an online purchaser is nearing the end of the purchasing process, after selecting the tickets, the final total price should only include the fully disclosed ticket price (including the disclosed breakdown of service charges, fees and surcharges), the fully disclosed reasonable and actual delivery charges, if any, and the fully disclosed reasonable charges for other optional special services, such as ticket insurance, if any, prior to the purchaser providing any payment information.

I hope this information has been helpful to you.  Please feel free to contact the Department with any additional questions or concerns.

Respectfully,

/s/

███████████
Senior Attorney, Division of Licensing Services
New York State Department of State
███████████

cc:
███████████
████████████████████